UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WHITNEY ELLSWORTH                                    CIVIL ACTION

VERSUS                                               NO. 14-1666

WINN-DIXIE MONTGOMERY, LLC                           SECTION "R" (3)


## ORDER AND REASONS

Defendant Winn-Dixie Montgomery, LLC moves for summary judgment on Plaintiff Whitney Ellsworth's claims of age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) and the ADEA's state-law counterpart, the Louisiana Employment Discrimination Law (LEDL).[1]   Because Winn-Dixie has submitted evidence that it terminated Ellsworth because of violations of company policy, and Ellsworth has failed to raise an issue of fact that Winn-Dixie's stated reason is pretextual, the Court GRANTS Winn-Dixie's motion.


## I.    BACKGROUND

This is an age discrimination suit by a former employee against his former employer.  Defendant, Winn-Dixie Montgomery, LLC (Winn-Dixie)

---

[1]      R. Doc. 42.

employed plaintiff, 61 year-old Whitney Ellsworth, from on or about September 1, 1973 until Winn-Dixie terminated Ellsworth on January 22, 2013.[2] Winn-Dixie replaced Ellsworth, an at-will employee, with someone about 20 years younger.[3] Ellsworth filed this suit on July 19, 2014.[4]

The parties dispute why Ellsworth was terminated.  Defendant asserts that Ellsworth was fired because of his performance, specifically that he violated company policy by not preventing a fraudulent telephone scam that caused significant monetary losses to Winn-Dixie.[5]  Ellsworth contends he was terminated because of his age.

The evidence in the record is as follows.  On January 8, 2013, at approximately 10:30 p.m., Ellsworth, then a co-director or co-manager of the store, received a phone call.[6]  The caller claimed to be with "corporate," and wanted to speak with an experienced cashier to "perform a procedure on the front end."[7]  Ellsworth transferred the call to a part-time cashier, Winde Ricard, who then did as the caller asked.[8] Ricard loaded $6,000 onto several

---

[2]      R. Doc. 42-1 at 1 ¶¶ 1, 3.
[3]      R. Doc. 21 at 6 ¶ 26.
[4]      R. Doc. 1.  Ellsworth amended his complaint on September 2, 2015.  R. Doc. 21.
[5]      R. Doc. 42-2 at 3.
[6]      *Id.* at 4.
[7]      R. Doc. 50-2 at 3 ¶ 11; R. Doc. 42-1 at 3 ¶ 14.
[8]      R. Doc. 42-1 at 4 ¶ 19.

NetSpend cards and provided the caller with the serial numbers of the cards.[9] The call proved to be a scam.  Winn-Dixie provides evidence that before the fraudulent transaction, Ellsworth had received training on theft and fraud detection that warned against telephone scams and completing transactions by telephone.[10] Winn-Dixie also proffered evidence that Ellsworth received multiple Corrective Action Reports for poor performance before the fraud occurred, including violations of merchandise display policies, failure to meet labor goals, and a customer complaint about Ellsworth's "rude and derogatory demeanor."[11]

It is undisputed that the cashier, who was in her early twenties, and actually performed the fraudulent transaction, was not terminated.  There is also evidence that in 2013 Winn-Dixie fired or demoted other employees over 40 years old.[12]

Ellsworth asserts claims for age-based discriminatory discharge under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-32 (2012), and under the ADEA's state-law counterpart, the Louisiana

---

[9]  *Id.* ¶¶ 22-23.
[10] R. Doc. 42-4 at 13; R. Doc. 42-7 (Ellsworth's Training Log)
[11] R. Doc. 42-2 at 2; R. Doc. 42-5.
[12] R. Doc. 50-2 at 4 ¶¶ 15-17.

3

Employment Discrimination Law (LEDL), La. Stat. Ann. §§ 23:301-314 (2016).  Winn-Dixie now moves for summary judgment.[13]

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, Fed. Prac. and Proc. Civ.2d § 2738 (1983)).

---

[13]   R. Doc. 42.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal quotation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

## B.    The Age Discrimination in Employment Act

The ADEA prohibits an employer from firing an employee "because of such individual's age". 29 U.S.C. § 623(a)(1).  To establish an ADEA claim, a plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

In *Gross*, the Court held that a "mixed-motive jury instruction" is never available under the ADEA.  *Id.* at 169.  A mixed-motive jury instruction states that if an employee proves that an adverse employment action was the result of both permissible and impermissible motives, the burden of persuasion shifts to the employer to demonstrate that it would have proceeded with the employment action notwithstanding the improper motive.  *Id.* at 174 (citations omitted); *see also Smith v. City of Allentown*, 589 F.3d 684, 690-91 (3d Cir. 2009) (discussing the implications of *Gross* on ADEA claims). *Gross* overruled Fifth Circuit caselaw that used the mixed-motive analysis in ADEA claims based on direct evidence of age discrimination.  *See, e.g.*, *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 250 (5th Cir. 2005) ("Plaintiffs

6

presenting direct evidence of age discrimination may proceed under the 'mixed-motive' analysis set forth in *Price Waterhouse.*").

*Gross* also noted: "[T]he Court has not definitely decided whether the evidentiary framework of [*McDonnell Douglass*], utilized in Title VII cases is appropriate in the ADEA context." *Gross*, 557 U.S. at 175-76 n.2.  The Fifth Circuit continues to apply the *McDonnell Douglas* framework to ADEA claims after *Gross. See, e.g.*, *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012); *Manaway v. Med. Ctr. of Southeast Tex.*, 430 F. App'x 317, 321 (5th Cir. 2011); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922-23 (5th Cir. 2010); *Jackson v. Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("[W]e are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.").

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a prima facie case that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.  *Holliday*, 483 F. App'x at 921 (citation omitted). After the employee establishes a prima facie case, the burden of production shifts to the employer to articulate a "legitimate,

nondiscriminatory reason for terminating the plaintiff." *Id.* If the employer articulates a legitimate, non-discriminatory reason for terminating the employee, the plaintiff must then rebut the employer's purported explanation by showing that the employer's reason is pretextual. *Moss*, 610 F.3d at 922. Consistent with *Gross*, the burden of persuasion remains with the employee at all times, but the "burden of production and the order of presenting proof" are allocated in accordance with the *McDonnell Douglas* framework. *Jackson*, 602 F.3d at 377-78.

## III.   DISCUSSION

Winn-Dixie's motion for summary judgment argues that Ellsworth cannot make out a prima facie case under the ADEA or the LEDL, and that even if Ellsworth has established a prima facie case, Ellsworth cannot establish that Winn-Dixie's stated reason for termination was pretextual.[14]

### A.   **Ellsworth's Prima Facie Case**

Ellsworth need only make a minimal showing to shift the burden of production to Winn-Dixie. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005). Winn-Dixie does not seriously challenge that Ellsworth has met his burden on the first three elements of the prima facie case, not

---

[14]   R. Doc. 42.

contesting that Ellsworth was fired, was qualified for his position,[15] and within the protected class at the time of his discharge.  What Winn-Dixie disputes is whether Ellsworth has met his burden on the fourth element.

Winn-Dixie argues that Ellsworth has not satisfied the fourth element because he cannot show that he was treated "less favorably than a similarly situated individual."[16]   Winn-Dixie relies on *Abarca v. Metro Transit Authority*, 404 F.3d 938 (5th Cir. 2005).   *Abarca*, however, addresses a prima facie case for employment discrimination based on race or national origin, not age.  *See id.* at 941.  In age discrimination cases, the plaintiff can satisfy the fourth element of a prima facie case simply by showing that he or she was replaced by someone younger.  *See, e.g., Holliday*, 483 F. App'x at 921 (citation omitted).  There is no dispute that Ellsworth was replaced by Steve Stevens, and although there is some ambiguity as to Mr. Stevens's age,[17] there is no dispute that he is younger than Ellsworth.  Therefore, Ellsworth has met this "low burden" and established his prima facie case.

---

[15]    Although Winn-Dixie states conclusorily that Ellsworth "was not qualified for his position," *id.* at 1, it abandons this argument and produces no evidence creating a factual dispute as to Ellsworth's qualifications.

[16]    R. Doc. 42-2 at 8.

[17]    Ellsworth attests in his Declaration that Stevens is 38, R. Doc. 50-2 at 1 ¶ 3, while Darlene Johnson estimates in her deposition that Stevens is 32 or 33.  R. Doc. 50-6 at 4.  It is unclear from the record and from the limited deposition excerpt who Darlene Johnson is or what her relation is to this litigation.

## B.    Legitimate, Non-discriminatory Reason

Ellsworth's prima facie case does not end the inquiry, it simply shifts the burden of production to Winn-Dixie.  The rebuttal of a plaintiff's prima facie case, like the prima facie case itself, requires only a minimal showing. *See, e.g.*, *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991).  Still, the explanation (if believed) must be legally sufficient to justify a judgment for defendant, and the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.9 (1981).

Winn-Dixie has produced evidence that Ellsworth was terminated because of poor performance and violation of company policy.  This evidence includes:

- Two Corrective Action Reports dated November 9, 2012 and January 5, 2013, detailing Ellsworth's violations of company policy, including violations of merchandise display policies, failure to meet labor goals, and a customer complaint about Ellsworth's "rude and derogatory demeanor."[18]

- The Corrective Action Report after the fraudulent transaction dated January 21, 2013 and signed by then-Human Resource Generalist Mindy Savoy, stating that Ellsworth has been terminated for "not following procedure."[19]

- A sworn statement from Bryce Brown, the Store Director at the time of the fraudulent transaction, stating that Ellsworth was terminated for

---

[18]    R. Doc. 42-5; R. Doc. 42-6.
[19]    R. Doc. 57 at 8.

10

violating company policy and for facilitating his subordinate's violation of company policy.[20]

- A statement from Nelson Fisher, Winn-Dixie's Asset Protection Specialist.[21] Fisher states that Ellsworth was terminated for violating company policy, and his statement describes how Ellsworth's actions violated company policy.[22]

Ellsworth does not dispute that violating company policy is a legitimate, non-discriminatory reason for his termination.  Rather, he asserts that because Winn-Dixie cannot identify who specifically made the decision to terminate him, Winn-Dixie cannot introduce any non-discriminatory reason for his termination.[23]  Additionally, even if the Court accepts Winn-Dixie's stated reason for his termination, Ellsworth argues that this reason is a pretext for discrimination.

The Court rejects Ellsworth's argument that Winn-Dixie cannot introduce a non-discriminatory reason because it has not identified the specific decision-maker.  In its response to Ellsworth's interrogatory that asked for the identities of everyone who "participated" in the decision to terminate Ellsworth, Winn-Dixie objected to the interrogatory as overly broad and identified Mindy Savoy and former District Director Perry

---

[20]   R. Doc. 42-10 at 2.
[21]   R. Doc. 42-11.
[22]   *Id.*
[23]   R. Doc. 50 at 11.

Fontanille.[24]   Ellsworth points to deposition testimony by Savoy and Fontanille to contend that they were not responsible for making the final decision to terminate Ellsworth.

This argument is unavailing.  First, Savoy testified at her deposition that she participated in the decision to terminate Ellsworth and collaborated with the other decision-makers.[25]  Second, although Fontanille did state in his deposition that he did not participate in the decision to terminate Ellsworth, he said that he does not know who made the decision to terminate Ellsworth, and never mentioned Savoy.[26]   Third, Ellsworth does not challenge the Corrective Action Report signed by Savoy that states that Ellsworth was terminated for not following company procedure.[27]  Finally, Ellsworth does not challenge the other documents stating that Ellsworth was fired for violating company policy.[28]  Winn-Dixie's showing as to the identity of the decision-makers and the existence of a nondiscriminatory reason to terminate Ellsworth are sufficient evidence to satisfy its burden under the *McDonnell Douglas* framework.

---

[24]   R. Doc. 50-7 at 8 ¶ 8.

[25]   R. Doc. 50-4 at 3-6.

[26]   R. Doc. 50-5 at 3-4.

[27]   R. Doc. 57 at 8.

[28]   *See* R. Doc. 42-10; R. Doc. 42-11.

## C.   Pretext

To preclude summary judgment, Ellsworth must show that there is a genuine issue of material fact that Winn-Dixie's reason for terminating him is pretextual.  *Moss*, 610 F.3d at 922.  Ellsworth can make this showing through evidence of disparate treatment or by evidence that Winn-Dixie's explanation is "false or 'unworthy of credence.'"  *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  A "mere scintilla of evidence of pretext" will not create an issue of material fact in all cases.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902-03 (5th Cir. 2000).  A plaintiff "must present *sufficient* evidence to find that the employer's asserted justification is false." *Id.* at 903 (internal quotation omitted).  In determining whether a plaintiff has introduced sufficient evidence of pretext to preclude summary judgment, "a court should consider the strength of plaintiff's prima facie case, the probative value of the [evidence] that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 902 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000)).

None of Ellsworth's pretext arguments is sufficient to create a genuine issue of material fact that Winn-Dixie's justification for his termination is either false or unworthy of credence.

### 1.   *Previous Corrective Action Reports*

Ellsworth first argues that the previous Corrective Action Reports in his file were unwarranted and recorded as an effort to "paper the file" to justify his termination.[29]  To support his contention, Ellsworth alleges that his performance was not deficient, and he should not have been disciplined for the supposed infractions because they were based on false allegations. Even if Ellsworth is correct that he unfairly or unjustly received these Corrective Action Reports, this would not create a genuine issue of material fact as to whether Winn-Dixie's stated reason is pretextual.  *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988).  The ADEA "was not intended to be a vehicle for judicial second-guessing of employment decisions, . . . [and] cannot protect older employees from erroneous or even arbitrary personnel decisions."  *Id.*, at 1507-08; *see also Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.").  More evidence is required to create a genuine issue of material fact that Winn-Dixie's stated reason for terminating Ellsworth is pretextual or unworthy of credence; disputes over Ellsworth's previous job

---

[29]    R. Doc. 50 at 3.

14

performance are insufficient. *Bienkowski*, 851 F.2d at 1508; *Republic Ref.*, 924 F.2d at 97.

### 2.   *Other Employees Terminated by Winn-Dixie*

Next, Ellsworth points to the 2013 termination or demotion of three other older employees[30] at either the Winn-Dixie where Ellsworth worked or other local Winn-Dixies. In connection with these employment actions, Ellsworth refers to a May 13, 2013 newspaper article noting that Winn-Dixie planned to save $100 million in labor costs by eliminating some positions.[31] Ellsworth argues that this plan to save money manifested itself in a discriminatory pattern of terminating or demoting older employees.

Ellsworth's argument fails for two reasons. First, Ellsworth has introduced no evidence suggesting that the other employees were fired because of their age. In fact, Ellsworth seems to suggest that those employees were fired as part of a larger plan to cut costs. The Fifth Circuit has made clear that the ADEA "prohibits discrimination on the basis of age, *not salary.*" *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-15 (1993))

---

[30]   The three are Byron Brown (age 54), Leo Schaefer (age 42 or 43), and Alton Preston (estimated to be in his late 40's or early 50's). R Doc. 50-2 at 4 ¶¶ 15-17.

[31]   R. Doc. 50-9.

(emphasis added).   Therefore, if these employees were terminated or demoted in an effort to save labor costs, this would not violate ADEA.

Second, even if the Court found that this plan to save money manifested itself in a discriminatory fashion, Ellsworth has not met his evidentiary burden to establish that there actually was a pattern of discrimination.  While discriminatory patterns or practices can be evidence both of a prima facie case and that an employer's stated justification is pretextual, *Moss*, 610 F.3d at 922, a "pattern or practice" of discrimination cannot be established by "isolated or sporadic discriminatory acts by the employer."  *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875 (1984).   Instead, there must be evidence that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice."  *Id.*  Additionally, the other employees must be similarly situated to the plaintiff for the evidence to be probative of a pattern.  *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (citation omitted). Not only has Ellsworth failed to introduce evidence that the other employees are similarly situated to him, *see id.* at n.2, but even if they were, three employees is too small a sample to suggest that Winn-Dixie was engaged in a pattern of discrimination.  *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1198-2001 (10th Cir. 2012) (finding that even if 1% of older

16

employees were discriminated against, this would still be sporadic discrimination, not evidence of a pattern). If the three employees were fired due to their age, the discrimination is "isolated or sporadic," not a pattern. *Cooper*, 467 U.S. at 875; *see also Apsley*, 691 F.3d at 1201.  Further, the finding that this is not a pattern is buttressed by the fact that Winn-Dixie terminated a younger employee for the same violation as Ellsworth.[32]

### 3.   *Identities of Decision-Makers*

Ellsworth also reiterates his decision-maker argument, this time suggesting that discrepancies over who actually made the decision to terminate Ellsworth are evidence that Winn-Dixie's stated justification is pretextual.  While the Fifth Circuit has held that substantial inconsistencies or discrepancies in the defendant's *explanation for termination,* when considered with other evidence, can create an inference of pretext, *see Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002), the Fifth Circuit has never held that discrepancies over the identities of decision-makers alone is sufficient to find pretext.  Ellsworth is also unable to cite any case suggesting otherwise.  Though Ellsworth points to two cases in which courts considered the misidentification of, or total failure to identify, the relevant decision-maker in finding the employer's stated reason to be pretextual, those cases

---

[32]   R. Doc. 42-11.

are dististinguishable.  In *Sabbrese v. Lowe's Home Centers Inc.*, a case which is not binding on this Court, the court found that the failure to identify the responsible decision-maker was a factor suggesting that the defendant's justification was pretextual.  320 F. Supp. 2d 311, 326 (W.D. Pa. 2004).  But there the pretext finding was heavily influenced by the fact that the employer's stated justification was inconsistent with the facts of the case, a factor not present here.[33]

Ellsworth also cites *Turner v. Kansas City Southern Railway*, 675 F.3d 887 (5th Cir. 2012).  In *Turner*, the court found the misidentification of the decision-maker relevant to whether the stated reason for termination was pretextual.  *See id.* at 901-03.  The court did not hold that misidentification alone was evidence of pretext, and *Turner* not only had direct evidence of race-based animus, but also showed that there was a lack of evidence supporting the employer's stated reason.  *See id.* at 902-03.  The opposite is true here, Ellsworth has introduced no direct evidence of age discrimination, and there is evidence supporting Winn-Dixie's stated reason.

---

[33]     Specifically, the court noted that it was implausible that the employee was terminated for the employer's stated reason of committing a battery against another employee, since the terminated employee was allowed to complete his shift after the alleged battery and remained an employee for two weeks; he was terminated only after complaining about discriminatory treatment.  *Sabbrese*, 320 F.3d at 324, 326.

Further, to the extent that Ellsworth argues that unidentified decision-makers were motivated by age in terminating Ellsworth, there is simply no evidence to support this contention.  Acknowledging this lack of evidence, Ellsworth argues that he did not have time to depose the other decision-makers to determine if they were motivated by age.[34]  But Ellsworth had the names of the decision-makers after Savoy's deposition on July 13, 2016, nearly a month before the discovery deadline.  Furthermore, Ellsworth could have asked this Court for an extension of the discovery deadline, but he made no such request.

Winn-Dixie has provided evidence that Savoy recommended Ellsworth be terminated because of his violation of company policy.[35]  Additionally, Savoy testified that Nelson Fisher participated in the decision to terminate Ellsworth.[36]  Winn-Dixie has submitted the contemporaneous incident report on the telephone scam, signed by Fisher, detailing Ellsworth's violations of company policy.[37]  Winn-Dixie has also submitted a statement by Fisher stating that he completed the incident report, gave the report to Savoy, and was present when Savoy terminated Ellsworth.[38]  Ellsworth has

---

[34]    R. Doc. 50 at 12.

[35]    R. Doc. 50-4 at 4.

[36]    *Id.*

[37]    R. Doc. 57 at 8.

[38]    R. Doc. 42-11.

19

introduced no evidence that any of the identified decision-makers were motivated by age in deciding to terminate him.  Without more, any discrepancies over who participated in the decision to terminate Ellsworth is insufficient to create a genuine issue of material fact as to whether Winn-Dixie's reason was pretextual.

### 4.   *Comparator Employee*

Next, Ellsworth argues that his termination for his role in the fraudulent phone transaction while the younger cashier involved was not terminated is evidence of pretext.  At the outset, Ellsworth is not disputing his role in the fraudulent transaction or that allowing a fraudulent transaction to occur on his watch could be a legitimate reason for termination.[39]  Still, whether the failure to terminate Winde Ricard is evidence of pretext depends on whether she is similarly situated to Ellsworth. *See, e.g., Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009).

Ellsworth's comparator evidence fails to raise an inference of pretext. From the record, it is apparent that Ellsworth and Ricard are not similarly situated.  First, Ellsworth was the store co-director; Ricard was a cashier. Ellsworth's position gave him supervisory and training responsibilities that Ricard's position does not include.  Ellsworth received training on telephone

---

[39]   R. Doc. 42-4 at 12.

scams and repeated warnings about not completing transactions by phone.[40] There is no evidence in the record that Ricard received the same warnings as Ellsworth.  Second, Ricard had a duty to follow Ellsworth's instructions, not vice versa.[41]  Third, Ellsworth and Ricard do not have the same or even comparable violation histories.  *Id.* at 260 (comparing work responsibilities and violation histories to determine if employees are similarly situated).  Ellsworth's employee file includes at least two corrective action reports for violations of company policy and customer complaints.[42]  There is no evidence in the record indicating any previous policy violations by Ricard.

Finally, although Ellsworth and Ricard were both involved in the fraudulent transaction, their conduct in question was not "nearly identical." *Id.* (citations omitted).  Winn-Dixie submits the statement of its Asset Protection Specialist Nelson Fisher.  Fisher states that Ellsworth violated company policy not only by failing to identify the caller, but also by directing his subordinate Ricard to handle the caller's transaction.[43]  By his own admission, Ellsworth did not identify the caller or take steps to verify that the caller was actually with Winn-Dixie corporate, even though he had been

---

[40]   R. Doc. 42-7; R. Doc. 42-4 at 13.
[41]   R. Doc. 42-4 at 6.
[42]   R. Doc. 42-5; R. Doc. 42-6.
[43]   R. Doc. 42-11.

21

cautioned to do so.[44]  Ellsworth also admits that he was Ricard's superior, that she was required to follow his instructions, and he told her to help the caller with "a procedure on the front-end."[45]  Therefore, Ellsworth's conduct and Ricard's conduct were not nearly identical.

That the failure to terminate Ricard is not evidence of pretext is also supported by evidence that Winn-Dixie terminated other co-directors for the same violation as Ellsworth's.  Winn-Dixie has submitted evidence, unchallenged by Ellsworth, that Winn-Dixie terminated two other local store co-directors for allowing fraudulent card transactions to occur on their watch.[46]  Unlike Ricard, these employees appear to be similarly situated to Ellsworth.  *See id.*

For the foregoing reasons, Ellsworth's comparator evidence fails to raise an inference of pretext.

### 5.    *Progressive Discipline Policy*

Finally, Ellsworth argues that his termination was not in compliance with Winn-Dixie's internal progressive discipline policy,[47] and that this noncompliance is evidence of pretext.[48]  Ellsworth asserts that Winn-Dixie's

---

[44]    R. Doc. 42-4 at 11, 13.
[45]    *Id.* at 6, 10.
[46]    R. Doc. 42-11.
[47]    R. Doc. 50-10 at 8.
[48]    R. Doc. 50 at 13.

policy is to not terminate employees until they have received three "write-ups," and points to the deposition testimony of Ms. Savoy to support his assertion.[49]   Ellsworth's argument is not supported by the facts.   Savoy's deposition testimony refutes Ellsworth's allegation that he was not fired in compliance with Winn-Dixie's policy, as she notes that serious violations can lead to terminations regardless of prior warnings.[50]   Further, Winn-Dixie's employee handbook expressly allows for immediate termination, regardless of prior write-ups, for certain violations.[51]   The handbook contains a list of violations that may call for immediate termination, and the list, which is not meant to be exhaustive, includes ignoring conduct by others that results in embezzlement of company funds or assisting another to commit theft.[52] Additionally, Ellsworth acknowledged in his deposition that failure to identify a caller seeking an over-the-phone transaction is grounds for termination.[53]

Ellsworth maintains that under Winn-Dixie's policy, he should have received a write-up for his conduct related to the fraudulent transaction, not termination.   As explained above, the ADEA is not a vehicle to second-guess

---

[49]   *Id.*
[50]   R. Doc. 50-4 at 11.
[51]   R. Doc. 50-10 at 8.
[52]   *Id.*
[53]   R. Doc. 42-4 at 12.

23

erroneous or even arbitrary employment decisions. *Bienkowski*, 851 F.2d at 1507-08; *Republic Ref.*, 924 F.2d at 97. Without some nexus between Ellsworth's termination and his age, even if there were evidence that Winn-Dixie did not follow company procedures, this would not rise to a level sufficient to infer pretext. *See Wyvill*, 212 F.3d at 305 (holding that even assuming company did not follow standard procedure in terminating plaintiff, the evidence was insufficient to infer pretext without "nexus between the employment actions taken . . . and the employee's age") (quotation omitted). Ellsworth's bald assertion that his termination was motivated by his age simply will not suffice. *Id.*

Based on the lack of evidence relevant to his claim, the Court concludes that no rational factfinder could find that Ellsworth's age was the "but-for" cause of his termination. *See Price*, 283 F.3d at 720; *Gross*, 557 U.S. at 177. Accordingly, the Court grants summary judgment against Ellsworth on his ADEA claim.

### D.   LEDL Claim

Ellsworth alleges the same set of facts in support of both his ADEA claim and his LEDL claim.[54] Federal and Louisiana courts consider the two statutes to be substantively identical and apply the same legal standards

---

[54]   R. Doc. 21 at 7 ¶ 38.

under each. *See, e.g., Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990); *LaBove v. Raftery*, 802 So. 2d 566, 573 (La. 2001). Thus, summary judgment is granted on Ellsworth's LDEL claim for the same reasons as those cited for granting summary judgment on his ADEA claim.

## IV.  CONCLUSION

For the foregoing reasons, Winn-Dixie's motion is GRANTED.

New Orleans, Louisiana, this __4th__ day of November, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE